UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENNETH SNIDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:15-CV-641-SPM |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Kenneth Snider ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

I. **FACTUAL BACKGROUND**

Plaintiff was 43 years old as of the date of the hearing before the ALJ. He last worked in 2008, doing concrete work, and he stopped working because of his leg and back pain. (Tr. 237). He testified that his condition has been steadily getting worse since 2008. (Tr. 238). His legs hurt

1

all the time, and he has numbness and tingling in his feet and legs all the time. (Tr. 243). He has some muscle spasms in his calves. (Tr. 244-45). He has bad days and good days, but more bad than good. (Tr. 247). Plaintiff spends about 60% of the day lying down in his recliner or on the couch, because it is the only way he can get real relief for his back pain. (Tr. 239). He tries to get exercise by walking about 150-200 yards at least once a day, but it is a struggle because his legs bother him. (Tr. 238-39). He does not do chores around the house and does not go shopping because he cannot walk for that long. (Tr. 239-40). He does not usually have trouble bathing or getting dressed. (Tr. 239-40). He can typically sit in a chair for about 20 to 30 minutes before he gets sharp pains in his lower back. (Tr. 240). Plaintiff has been told not to lift anything over 22 pounds. (Tr. 242). Twisting his body from side to side or bending down to pick something up worsens his back and leg pain. (Tr. 243).

Plaintiff has received regular treatment for lower back pain throughout the alleged disability period. He has consistently reported moderate to severe back pain to his treatment providers (at 6 to 8 out of 10 on the pain scale when he is taking medications); has often reported that the pain radiates to his legs and feet; has regularly been observed to have a mildly to moderately antalgic gait, moderate tenderness in the lumbar spine, and a symptomatic range of motion in the lumbar spine; and has consistently been treated with numerous pain medications and muscle relaxers, including Percocet, hydrocodone, Mobic, gabapentin, nortriptyline, baclofen, nabumetone, and others. (Tr. 9-64, 736-50, 815-19, 880-84, 897-919, 924-28, 967-77, 974-76, 981-84, 999-1011). He has also had frequent lumbar epidural steroidal injections (887-88, 891-92, 895-96, 920-22, 978-80, 985-86, 997-98) and has undergone lumbar medial branch radiofrequency nerve ablation procedures (Tr. 92, 94, 98).

On April 26, 2012 (the alleged onset date), an EMG test showed moderate right L5/S1 radiculopathy and mild left L5/S1 radiculopathy. (Tr. 761). Radiographic testing of the lumbar spine performed in May 2012 showed a levo rotoscoliosis and degenerative facet disease on the right L4-5, L5-S1. (Tr. 691). An MRI performed in June 2012 showed degenerative disc disease at the L2-L3 and L4-L5 levels with desiccation of the intervertebral disc and a loss of disc height; a disc bulge with a superimposed small broad-based central disc protrusion at the L4-5 level indenting the ventral thecal sac and causing mild narrowing of the lateral recesses; no severe central canal stenosis; and no spondylolisthesis. (Tr. 689-90). An MRI performed in June 2014 showed lumbar levoscoliosis centered at L3; a developmentally narrow central spinal canal; a small L4-L5 central disc protrusion; and several findings of mild or minimal stenosis. (Tr. 113-14).

On August 15, 2012, Plaintiff was evaluated by Dr. Tony Chien, D.O. Dr. Chien's examination showed pain with palpation over the spinous process and paraspinal muscle of lumbar spine; pain with flexion and extension of the lumbar spine; spasm over the paraspinal muscle of the lumbar spine; pain with palpation over the SI joints bilaterally; a positive Patrick-Faber's test in both hips; and a positive straight leg raising test in supine position on the right lower extremity. Other examination findings were normal, including findings of a normal gait and normal muscle strength and range of motion in Plaintiff's hips, knees, and ankles. Dr. Chien found that Plaintiff was not a surgical candidate at the time. (Tr. 988-89).

The record contains no opinion evidence from any consulting, examining, or treating source.

## II. PROCEDURAL BACKGROUND

On July 31, 2012, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since April 26, 2012 due to lumbar disc displacement, neuritis and radiculitis, spinal stenosis, idiopathic scoliosis and kyphoscoliosis, nerve impingement in leg, chronic leg weakness, chronic severe back and leg pain and immobility, and insomnia. (Tr. 383-97, 420). On September 21, 2012, his application was denied. (Tr. 311-22). Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 326-27). After a hearing held on November 7, 2013, the ALJ issued an unfavorable decision on November 21, 2013. (Tr. 213-29). On December 18, 2013, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 212). On March 13, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the

claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since April 26, 2012, the alleged onset date; that Plaintiff had the severe impairments of lumbar degenerative disc disease, facet joint arthritis, and hypertension; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 218-19). The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff can sit for six of eight hours per day; can stand and walk for six of eight hours per day; can lift 20 pounds occasionally and ten pounds frequently; cannot climb ladders, ropes, or scaffolds; can stoop,

kneel, crouch and crawl occasionally; can occasionally operate foot controls; and must avoid exposure to work hazards such as unprotected heights or dangerous machinery. (Tr. 219). The ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 222). Relying on the testimony of a vocational expert, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, including security guard, cleaner, and "assembly." (Tr. 222-23). Thus, the ALJ found that Plaintiff was not under a disability from April 26, 2012, through the date of the ALJ's decision. (Tr. 223).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ failed to properly evaluate Plaintiff's RFC and explain his findings; and (2) that the ALJ failed to perform a proper credibility assessment.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and

substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The RFC Assessment

Plaintiff's first argument is that the RFC assessment was inadequate because it was conclusory, was not supported by substantial evidence, and was not supported by any medical evidence that addresses Plaintiff's ability to function in the workplace. After review of the ALJ's decision and the record as a whole, the Court agrees.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Id.* at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). *See also Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it

8

must be supported by some medical evidence of the claimant's ability to function in the workplace."). An RFC assessment that is "not properly informed and supported by 'some medical evidence' in the record" cannot stand. *Hutsell*, 259 F.3d at 712.

After review of the record as a whole, the Court does not find any medical evidence that addresses Plaintiff's ability to function in the workplace or that supports the ALJ's finding that Plaintiff is capable of sitting for six of eight hours per day; standing and walking for six hours per day; lifting 20 pounds occasionally and ten pounds frequently; and stooping, kneeling, crouching, and crawling occasionally. The record contains no medical opinion evidence from any source that addresses Plaintiff's ability to function in the workplace, nor does the record contain treatment notes or objective findings that address Plaintiff's ability to function in the workplace and support the RFC assessment.

The Court recognizes that the absence of medical opinion evidence does not necessarily require remand. In some cases, mild or unremarkable objective medical findings and other medical evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing the Plaintiff's ability to function in the workplace. *See, e.g.*, *Steed v. Astrue*, 524 F.3d 872, 875-876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"); *Thornhill v. Colvin*, No. 4:12-CV-1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of

motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).

Here, however, the record does not contain generally mild or unremarkable objective findings or other medical evidence that tends to support the RFC. Instead, the medical evidence in the record appears to support Plaintiff's assertion that he has chronic back and leg pain that significantly impacts his ability to sit, stand, and walk for significant periods of time. Plaintiff consistently reported moderate to severe back pain, aggravated by physical activity, even while taking his medications; Plaintiff's treatment providers frequently noted physical examination findings of tenderness in the lumbar spine, antalgic gait, and symptomatic range of motion in the lumbar spine; in evaluating Plaintiff, Dr. Chien found pain with palpation over the spinous process and paraspinal muscle of lumbar spine, pain with flexion and extension of the lumbar spine, spasm over the paraspinal muscle of the lumbar spine, pain with palpation over the SI joints bilaterally, a positive Patrick-Faber's test, and a positive straight leg raising test; imaging and nerve conduction studies showed "degenerative disc disease with desiccation of the intervertebral discs and loss of disc height," "lumbar levoscoliosis," "levo rotoscoliosis," "degenerative facet disease," and "moderate radiculopathy"; and Plaintiff was regularly treated with numerous narcotic and non-narcotic pain medications, injections, and other procedures.

The ALJ's very brief discussion of the RFC assessment does not make it clear how the medical or other evidence supports that assessment. The ALJ first noted that the RFC assessment was supported by the findings of Dr. Chien. (Tr. 222). However, as discussed above, Dr. Chien's report did not show uniformly mild or unremarkable results, but rather included numerous positive and negative examination findings. Neither Dr. Chien nor the ALJ explained how any of those findings relate to the ability to walk, stand, sit, or perform other work-related activities, and

it is not apparent to the Court how they do. The ALJ also noted that "[t]he evidence of record points to some mild stenosis and back pain, which responds to analgesic medications, rest and heat." (Tr. 222). However, it is unclear why the ALJ focused on the finding of "mild stenosis" rather than on the many other objective findings that were not described as "mild"—findings of degenerative disc disease, levo rotoscoliosis, degenerative facet disease, and radiculopathy. Moreover, given the absence of opinion evidence, it is unclear how the objective finding of "mild stenosis," or any of these other findings, relates to Plaintiff's functional abilities. The Court further notes that although Plaintiff's medications and rest did help his symptoms somewhat, the ALJ did not discuss the fact that Plaintiff continued to report moderate to severe pain and continued to have abnormal examination findings even when he was on his medications. Also, although the ALJ found that Plaintiff's symptoms responded to rest and heat, he did not incorporate into the RFC any limitations that would accommodate a need for rest or heat during the workday.

In her brief, the Commissioner emphasizes that Plaintiff reported that his lumbar epidural injections offered from 80 to 90 percent relief of his symptoms. (Tr. 741, 884, 895, 922, 979, 986, 998). However, the record suggests that any such reduction in symptoms was very short-lived. For example, Plaintiff received a lumbar epidural injection on October 24, 2012, and his pre-procedure pain level was at a 7 on a scale of 1 to 10. (Tr. 893-96). At his next doctor visit on October 31, 2012, Plaintiff's pain was again at a 7; his gait was "antalgic mild-moderate"; he had moderate tenderness in his lumbar spine; and he had coldness and numbness in both feet and radicular pain in both legs. (Tr. 897-900). A similar situation occurred in May 2013, with Plaintiff's pain being at an 8 only twelve days after his most recent lumbar epidural injection. (Tr. 920-28).

11

The Commissioner also cites some findings of normal or only mildly antalgic gait, normal motor strength, and normal sensation in the record. However, the Commissioner does not explain how these isolated normal or mild findings support a conclusion that Plaintiff can perform the demands of light work, particularly in light of the many other abnormal findings in the record.

In sum, because the ALJ's RFC assessment was not informed and supported by "some medical evidence" in the record that addressed his ability to function in the workplace, this case must be reversed and remanded for further consideration. *See Hutsell,* 259 F.3d at 712. On remand, the ALJ may need to further develop the record regarding Plaintiff's ability to function, perhaps by contacting one of his treating physicians or by obtaining the services of a consultative examiner.

### C. The Credibility Assessment

Plaintiff's second argument is that the ALJ failed to make a proper assessment of the credibility of Plaintiff's subjective complaints. Because the ALJ's re-evaluation of the medical evidence on remand may affect the ALJ's analysis of the credibility of Plaintiff's subjective complaints, the Court need not address this issue. However, the Court notes that if the ALJ discounts Plaintiff's subjective complaints on remand, the ALJ should consider the credibility factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c) and should "make an express credibility determination explaining the reason for discrediting the complaints." *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (quotation marks omitted).

### VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g)

                                                      SHIRLEY PADMORE MENSAH
                                                     UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2016.